Robert B. WEST and Russell S. Serpa, individually and on behalf of all other employees, retired employees and former employees of the Town of Bristol, Rhode Island, similarly situated, Plaintiffs,

v.

TOWN OF BRISTOL; State of Rhode Island and Providence Plantations; Edward D. DiPrete, in his capacity as Governor of the State of Rhode Island and individually; Michael Doyle; Leonard F. Clingham, Jr. in his official capacity as Legal Counsel, Rhode Island Department of Administration and individually; and Louis P. Alfano, in his capacity as Chief, Veterans Affairs of the State of Rhode Island and individually, Defendants.

No. 86–0218 L.

United States District Court, D. Rhode Island.

May 3, 1989.

Ina P. Schiff, Lynette Labinger, Providence, R.I., Terrence Turner, Cranston, R.I., for plaintiffs.

Jos. A. Kelly, (DiPrete, Clingham, Doyle and Alfano), A. Peter Lovely, Nicholas Trott Long, Asst. Atty. Gen., Providence, R.I., Richard Abilheira, Asst. City Sol. for Bristol, Bristol, R.I., for defendants.

## OPINION AND ORDER

LAGUEUX, District Judge.

This civil rights matter is presently before the Court on Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The underlying dispute arises out of the Rhode Island General Assembly's retroactive repeal of R.I.Gen.Laws § 30–21–3 which provided for enhanced employment seniority status for certain veterans of the United States armed forces. Plaintiffs have brought an action under 42 U.S.C. §§ 1983, 1985 and 1986 claiming, *inter alia*, an unconstitutional abrogation of their vested seniority rights under § 30–21–3. Defendants assert that no such rights exist. Defendants' motion to dismiss this action for failure to state a claim upon which relief can be granted is now in order for decision.

Plaintiffs, Robert B. West and Russell S. Serpa, are police officers for the Town of Bristol, Rhode Island. They became Bristol policemen after serving in the armed forces during the Viet Nam conflict. West was on active duty from July 15, 1963 through April 20, 1966 and Serpa was on active duty from August 31, 1965 through August 30, 1967.

Each plaintiff applied for employment with the Town of Bristol within one year of his honorable discharge from military service. West began his tenure as a police officer on August 7, 1967 and Serpa joined the police force on December 18, 1968. Plaintiffs have continued to serve as police officers in Bristol to this day. They did not claim benefits under the veterans' preference statute until 1985. Naturally, the Town balked at that request because the statute was either in the process of being repealed or had been repealed and, in any

event, plaintiffs had been sleeping on their unexercised seniority options since the commencement of their employment with the Bristol police.

Named as defendants in this dispute are the Town of Bristol, the State of Rhode Island, Edward D. DiPrete in his capacity as Governor of the State of Rhode Island and individually, Michael Doyle, a former Rhode Island Director of Administration, individually, Leonard F. Clingham in his official capacity as legal counsel to the Rhode Island Department of Administration and individually, and Louis P. Alfano in his official capacity as Chief of Veterans Affairs of the State of Rhode Island and individually.

### Legislative Background

Before addressing plaintiffs' specific contentions, it is necessary to set the statutory stage for this controversy. In 1945 the Rhode Island General Assembly enacted employment of veterans legislation that was subsequently codified as R.I.Gen.Laws § 30–21–2 *et seq.* which reads in pertinent part as follows.

Section 30–21–3. Seniority in new employment.—Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon proper proof of his service and the length thereof, upon applying for employment within one (1) year after his honorable discharge from said forces, shall possess and be given credit for seniority rights equal to the time he served in said forces.

Sec. 30–21–7. Any one knowingly violating any provision of [this act] shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars ($1,000.00).

Section 30–21–3, according to the Rhode Island Supreme Court, was designed as a "legislative policy declaration," *Brennan v. Kirby*, 529 A.2d 633, 639 (R.I.1987), to reflect already existing federal laws concerning seniority credits for veterans reentering the civilian workforce or seeking new, non-military employment.

In 1953 the General Assembly extended § 30–21–3 to include veterans of the Korean War, 1953 R.I.Pub.Laws, ch. 3230, and in 1968 the Legislature further extended its coverage to Viet Nam veterans and veterans of other undeclared wars or campaigns. 1968 R.I.Pub.Laws, ch. 7. These provisions were codified as R.I.Gen.Laws 30–22–3 which reads as follows.

The provisions of all of the statutes of this state granting benefits or privileges to veterans of any war in which the United States of America has heretofore been engaged, or to the widow or other surviving kin of deceased veterans of any such war, shall hereafter be construed to provide for like benefits and privileges for any man or woman of the armed forces, who has been engaged heretofore, is now, or may hereafter be engaged in the active conduct of and/or fighting in the Korean campaign or the conflict in Viet Nam or any following campaign or war, declared or undeclared, which the armed forces of the United States of America conduct or in which said forces have a part, and who, having been actively engaged as hereinbefore described, has heretofore or may hereafter be honorably discharged from the armed forces of this nation, and to the widow or other surviving kin of any such deceased veteran of said campaign or war. For the purposes of this section, "Active conduct of and/or fighting in the conflict in Viet Nam" shall mean service by any man or woman of the armed forces of the United States on and after August 5, 1964.

On June 24, 1985, the General Assembly, motivated by concern over the potential economic burden on taxpayers posed by veterans' preferences, *Brennan v. Kirby* at 641, passed 1985 R.I.Pub.Laws, ch. 181, art. 64 which retroactively repealed § 30–21–3 in its entirety. The repealing legislation reads as follows.

SECTION 1. Section 30–21–3 of the General Laws in Chapter 30–21 entitled

"Employment of Veterans" is hereby repealed in its entirety.

The remedy for any alleged violation of this section including any pending cases providing for veterans' benefits in connection with employment, including, without limitation, any seniority rights, shall be limited to prospective injunctive relief and shall not include any award of damages, back pay, attorneys' fees, or any retroactive redress for any alleged past violations.

The provisions of this article are deemed to be severable and the invalidation of any particular provision or section hereof shall not be deemed to affect the validity of any other provisions or sections, all of which are deemed to be independent.

SECTION 2. This article shall take effect upon passage and shall be given retroactive effect.

The constitutionality of the repeal was questioned shortly after its enactment. A justice of the Rhode Island Superior Court certified the issue to the state Supreme Court in connection with suits brought against the City of Newport and the Town of Middletown wherein past and then current employees of those municipalities sought relief under §§ 30–21–3 and 30–22–3. Rhode Island's Supreme Court subsequently determined that the retroactive repeal effected by Pub.Laws 1985, ch. 181, art. 64 did not violate any provisions of the United States Constitution or the Rhode Island Constitution. That unanimous decision was issued in 1987 by Chief Justice Fay in *Brennan v. Kirby*, 529 A.2d 633.

### Judicial Background—Brennan v. Kirby

The plaintiffs in *Brennan v. Kirby* were eighteen active members of the Newport police force, a firefighter for that city, and one of its retired policemen. They filed suit in Superior Court (Newport County) on March 26, 1985 seeking a declaration of their seniority rights under §§ 30–21–3 and 30–22–3 and a writ of mandamus ordering Newport officials "to extend seniority credits to eligible plaintiffs." 529 A.2d at 635.

While this action was pending, the General Assembly repealed § 30–21–3 in June 1985. In June of the following year, four active and two former Middletown police officers sued that municipality in Superior Court to enforce seniority rights under §§ 30–21–3 and 30–22–3 and to have the General Assembly's repealing legislation declared unconstitutional. *Id.*

Several hearings on the matters raised in the Newport and Middletown suits were held in Newport County Superior Court. The presiding trial justice, after conferring with the Rhode Island Attorney General, decided that these disputes were controlled by an unsettled question of law. The justice then, in accordance with R.I.Gen.Laws § 9–24–27 (1985 Reenactment), certified the following question to the Rhode Island Supreme Court for its determination.

Is Section 64 of Chapter 181 of the Public Laws of 1985 (which repealed R.I.G.L. § 30–21–3) valid under Article 1 Sections 12 and 16 of the Constitution of the State of Rhode Island; Article I Section 10 and the Fifth and Fourteenth Amendments to the United States Constitution; and pursuant to R.I.G.L. § 43–3–22; as to all persons whose claims are based upon assertions that they satisfied the statutory criteria of R.I.G.L. § 30–21–3 and § 30–22–3 prior to June 25, 1985?

Article 1, Section 12 of the Rhode Island Constitution prohibits ex post facto laws or "law[s] impairing the obligation of contracts." Article 1, Section 16 of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation." Article I § 10 of the United States Constitution prohibits states from passing any law "impairing the obligation of contracts." The pertinent provisions of the Fifth Amendment of the United States Constitution are the due process and taking clauses, and the reference to the Fourteenth Amendment pertains to the due process and equal protection clauses contained therein. Finally, R.I.Gen. Laws § 43–3–22 (1956 Reenactment) provides that "[t]he repeal of any statute shall in no case affect any act done, or any right accrued, acquired, or established, or any

suit or proceeding had or commenced in any civil case before the time when such repeal shall take effect."

In addressing the question presented, the Rhode Island Supreme Court first construed Article 64 of Chapter 181 of the Public Laws of 1985 to retroactively repeal § 30–21–3 "in its entirety, including pending actions and remedies thereunder." 529 A.2d at 638. The Court then decided that § 30–21–3 did not express actual intent to contractually bind the State to eligible veterans. Consequently, the benefits once conferred by this statute were "gratuities and [did] not represent private property." 529 A.2d at 641. Thus, the repeal effected by Article 64 violated neither the contract nor taking clauses of the United States Constitution nor the parallel provisions of the Rhode Island Constitution.

The Court also determined that retroactive repeal of the statute was justified by a rational legislative purpose "to avoid the unanticipated potential for financial calamity that would beset the state and municipalities, as well as private employers within the state, if they were now required to credit plaintiffs with seniority benefits for prior military service." 529 A.2d at 641. In reaching this conclusion the Court considered the counterveiling unfairness that retroactive repeal created for those veterans who relied on preexisting law when choosing post-military employment, but noted that plaintiffs "never relied on § 30–21–3 when they applied for and accepted municipal employment." *Id.* at 641. Plaintiffs would not, according to the decision, "have foregone municipal employment had they been aware that no seniority benefits would be credited." *Id.* at 640–641. The public interest in extinguishing veterans' preferences through Article 64, therefore, greatly outweighed "the minimal degree of unfairness to plaintiffs." *Id.* For these reasons, the *Brennan* Court found the Due Process clauses of the Fifth and Fourteenth Amendments of the United States Constitution were satisfied by a rational basis for retroactive repeal.

## The Complaint

Plaintiffs' complaint contains five counts and one-hundred-and-twenty-two paragraphs. A cursory reading of the complaint establishes beyond doubt that it violates both the letter and spirit of Fed.R.Civ. P. 8(a). It contains neither a short nor a plain statement of the claims being made by plaintiffs. The Court must wade through paragraph after paragraph of excess verbosity to arrive at and then understand precisely what plaintiffs are attempting to assert as a cause of action. Therefore, each count must be drastically condensed for purposes of clarity. Count I seeks recovery from the Town of Bristol based on alleged violations by municipal officials of 42 U.S.C. § 1983. The gravamen of this claim is that plaintiffs were denied equal protection of law in contravention of the Fourteenth Amendment of the United States Constitution. Count II is directed at the State of Rhode Island for failure to enforce § 30–21–3 or to properly apprise veterans of their benefits under this statute in violation of federal equal protection strictures, due process, and 42 U.S.C. § 1983. Count III alleges that defendants DiPrete, Doyle, and Clingham conspired to deprive eligible veterans of their seniority preferences by effecting the retroactive repeal of § 30–21–3 in a manner violative of state law, equal protection, and 42 U.S.C. §§ 1983, 1985(2) and (3), and 1986. Count IV challenges the constitutionality of Article 64 of Chapter 181 of Rhode Island's Public Laws of 1985 under federal due process standards, state and federal contract clauses, and the equal protection provision of the Fourteenth Amendment. Count V assails defendant Alfano, state Chief of Veterans' Affairs, for allegedly failing to perform his statutory duty under R.I.Gen.Laws § 30–17–5 (1956 Reenactment) to provide legal and other assistance, at no cost, to all Rhode Island veterans in the prosecution of claims for veterans' benefits. This count specifically alleges that Alfano "willfully and knowingly refused to advise" Rhode Island veterans about § 30–21–3 in derogation of due process and equal protection of law, and 42 U.S.C. § 1983.

Plaintiffs seek declaratory and injunctive relief in addition to compensatory and exemplary damages. They ask this Court to declare defendants' actions regarding non-enforcement and repeal of § 30–21–3 as unconstitutional and/or unlawful. They seek to enjoin state officials from further reliance on Article 64 as a basis for denying requested seniority rights under § 30–21–3. Plaintiffs also seek to restore eligible veterans to the status they would hold absent retroactive repeal. In essence, plaintiffs request back pay, promotions, pension accruals, applicable interest, and other seniority enhancements they would have received had they exercised their employment preferences under § 30–21–3 before its repeal.

Defendants contend that this complaint should be dismissed because *Brennan v. Kirby* is dispositive of all claims predicated on state law. Furthermore, they argue that plaintiffs have not shown disparate treatment of similarly situated veterans in violation of equal protection nor have they alleged conspiratorial conduct that violates 42 U.S.C. § 1985.

At oral argument plaintiffs voluntarily dismissed their complaint against all defendants named individually. That eliminates Doyle from the case. The remaining individuals, DiPrete, Clingham and Alfano, however, remain in this action in their official capacities which means that this is now, in reality, an action against the Town of Bristol and the State of Rhode Island.

*Discussion*

For purpose of analysis, plaintiffs' claims shall be reviewed in three parts: (1) allegations of due process and 42 U.S.C. § 1983 transgressions based on deprivation of state-created rights; (2) alleged denial of equal protection of law and related violations of 42 U.S.C. § 1983; (3) alleged violation of 42 U.S.C. §§ 1985 and 1986 through retroactive repeal of § 30–21–3.

1. Due Process and 42 U.S.C. § 1983

The Due Process Clause provides, in pertinent part, that "[no] state [shall] deprive any person of life, liberty, or property without due process of law...." U.S. Const. Amend. XIV. Violations of this constitutional provision can be remedied by bringing an action under 42 U.S.C. § 1983 (1982) which Congress originally enacted as part of the Civil Rights Act of 1871, known as the "Anti–Lynching" or "Ku Klux Klan Act." The statute reads in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The purpose of 42 U.S.C. § 1983 is "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be legislative or judicial.'" *Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 503, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982) (*citing Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972)). *See also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It must be noted, however, that 42 U.S.C. § 1983 is not in itself a source of substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed. 2d 508 (1979). It provides a remedy only, and the substantive rights must be found in the Constitution or laws of the United States. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (state law granting public employees absolute immunity from liability for any injuries resulting from their decision to release a prisoner from jail serves as a bar in bringing § 1983 action by the family of a girl murdered by parolee).

In the instant action, plaintiffs contend that their federal due process rights

were ignored by state officials who failed to enforce § 30–21–3 or to notify eligible veterans of their seniority enhancements under that statute. The *Brennan* decision, however, lays these contentions to rest. As a matter of state law, veterans' preferences under § 30–21–3 were merely gratuities or expectancies. 529 A.2d at 641. The Rhode Island veterans' employment statute at issue did not create a constitutionally protected property interest, and state officials were under no duty to enforce this statute or notify potential beneficiaries of its provisions. Moreover, the *Brennan* ruling established that the potential seniority preferences of § 30–21–3 were not within the ambit of the contract or taking clauses of the state or federal constitutions because these preferences were not contractual obligations of the state. No constitutionally protected property interest was created unless and until an eligible veteran *exercised* and *received* seniority enhancements under § 30–21–3. In short, what the State Legislature gave to veterans, it was free to take away before vested rights intervened.

■ The predicate to a property interest in a benefit is a legitimate claim of entitlement under state law. *Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984) (*citing Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). Denial of such an entitlement in turn creates the basis for a property-interest due process claim upon which a 42 U.S.C. § 1983 action may be anchored. Here, both the constitutional claim and the § 1983 action fail for lack of an underlying, cognizable state-created property interest which had vested.

■ Plaintiffs in the present dispute failed to exercise their option under § 30–21–3 and, like the plaintiffs in *Brennan,* their potential benefits were extinguished by the retroactive repeal. This conclusion is grounded in state law as determined by the Rhode Island Supreme Court. In dismissing plaintiffs' due process allegations for failure to present a substantive claim actionable under 42 U.S.C. § 1983, this Court defers to Rhode

Island's highest state court as the ultimate expositor of state law. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975).

**2. Equal Protection and 42 U.S.C. § 1983**

■ The Fourteenth Amendment to the United States Constitution provides in pertinent part that "[n]o State shall ... deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Plaintiffs assert that the Town of Bristol and the State of Rhode Island violated this constitutional guarantee by not enforcing § 30–21–3. These veterans claim they were treated differently than military veterans who received benefits under other Rhode Island laws. The principal flaw in this argument is that the facts alleged by plaintiffs, even if proven, do not demonstrate disparate treatment of similarly-situated veterans regarding employment benefits. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

Plaintiffs have failed to show that defendants enforced § 30–21–3 with respect to some but not other veterans. They also fail to recognize that different Rhode Island veterans' employment statutes, such as § 30–21–1 (reinstating veterans to their prior civilian employment), affect different classes of veterans. Consequently, the State was under no constitutional obligation to prosecute the Town of Bristol for its non-enforcement of § 30–21–3. Moreover, even if plaintiffs were treated differently than a similarly-situated class of veterans, such discrimination would not satisfy the minimum scrutiny test for unconstitutionality that is applicable to the rights claimed by these plaintiffs. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (minimum rationality standard of constitutional review applies to legislative classifications that do not involve a fundamental right or a suspect class). Defendants' legitimate interest in avoiding the burdensome cost of administering § 30–21–3 certainly bears a rational relationship to both the State's non-enforcement of that stat-

ute's penalty provision and to the General Assembly's elimination of unexercised seniority preferences. *Brennan v. Kirby* at 641. Accordingly, plaintiffs' complaint, as a matter of law, fails to set forth even a colorable equal-protection claim against any of the named defendants. It follows that the attendant § 1983 action must also be dismissed for failure to state a claim upon which relief can be granted.

**3. 42 U.S.C. § 1985(2) and (3) and § 1986**

Plaintiffs also seek recovery under 42 U.S.C. §§ 1985(2) and (3) and 1986 claiming that certain defendants acting in their official capacities concerning promulgation of Article 64 established an actionable conspiracy under § 1985(2) and (3). Section 1985 reads in pertinent part as follows:

Conspiracy to interfere with civil rights
* * *

Obstructing justice; intimidating party, witness, or juror

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

Depriving persons of rights or privileges

(3) If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiffs argue that Governor DiPrete, Legal Counsel Clingham, and others conspired to obstruct justice with intent to deprive these veterans of equal protection of the laws. Specifically, plaintiffs contend that Governor DiPrete and Legal Counsel Clingham, with knowledge that a number of suits to enforce § 30–21–3 were pending, held a meeting to discuss the possible repeal of § 30–21–3. This meeting resulted in the drafting of Article 64, its submission to the General Assembly, and the ultimate retroactive repeal of § 30–21–3. It is ironic, however, that plaintiffs cite as the basis for this § 1985 action the Governor's purely pecuniary motive for initiating the re-

peal. Such a purpose serves to remove a claim from the reach of § 1985.

To state a claim upon which relief can be granted under § 1985(2) or (3), there must be an "allegation of a conspiracy motivated by a racial, or otherwise class-based invidiously discriminatory class animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Turner v. Unification Church*, 473 F.Supp. 367 (D.R.I.1978) *aff'd* 602 F.2d 458 (1st Cir.1979). Plaintiffs, however, predicate the current § 1985 suit on financial motivation, thereby dooming this action from the outset. *Rayborn v. Mississippi State Bd. of Dental Examiners*, 776 F.2d 530 (5th Cir.1985). Further, as previously discussed, the actions of the Governor, his staff, and the General Assembly did not constitute class-based invidious discrimination against veterans eligible under § 30–21–3. The efforts to retroactively repeal § 30–21–3 complied with both state law and federal constitutional strictures. There was nothing illegal, unconstitutional, or conspiratorial about the manner in which veterans' expectancies were revoked. For these reasons, the § 1985 action must be dismissed as to all named defendants.

Since this dispute presents no viable § 1985 claim, the dependent § 1986 action for neglect to prevent a conspiracy to commit the wrongs enumerated in § 1985 must also be dismissed. *Armstrong v. School Dist. of Philadelphia*, 597 F.Supp. 1309 (E.D.Pa.1984); *Wagar v. Hasenkrug*, 486 F.Supp. 47 (D.Mont.1980).

### Summary

Defendants' 12(b)(6) motion to dismiss plaintiffs' complaint is hereby granted on all counts as to all named defendants.

*It is so Ordered.*