Gerald M. JACKSON, Plaintiff

v.

Barry FABER, Robert Laskoff, Toby Hollander, and Paul Sobchuk, Defendants.

Civ. No. 93–128–P–C.

United States District Court, D. Maine.

Oct. 4, 1993.

Gerald M. Jackson, pro se.

William W. Willard, Bernstein, Shur Sawyer, & Nelson, Portland, ME, for Paul Sobchuk.

Elizabeth Germani, Ernest Babcock, Friedman & Babcock, Portland, ME, for Toby Hollander, Robert Laskoff.

Kevin Beal, Jonathan S. Piper, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for Barry Faber.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

Plaintiff, Gerald M. Jackson, commenced this civil rights action alleging that Defendants, Barry Faber, Robert Laskoff, Toby Hollander, and Paul Sobchuk, conspired with the state Assistant District Attorney to obtain a guilty plea from Plaintiff on two counts of Gross Sexual Misconduct, 17–A M.R.S.A. § 253, although Plaintiff was not guilty of Gross Sexual Misconduct. Plaintiff alleges that this conspiracy included a plan to bring a collateral civil action against Plaintiff on behalf of his niece, Tammy Jackson, the alleged victim of this sexual abuse. Plaintiff contends that this conspiracy deprived him of rights guaranteed by the First, Sixth, and Fourteenth Amendments in violation of sections 1983, 1985, and 1986 of the Civil Rights

Act of 1871. 42 U.S.C.A. §§ 1983, 1985, 1986.

Plaintiff alleges that all four defendants acted in concert with the Assistant District Attorney, directly or indirectly, to deprive Plaintiff of effective assistance of counsel, access to courts and substantive due process, and thereby to obtain a conviction on improper charges and to bring a collateral action on behalf of Tammy Jackson against Plaintiff. According to Plaintiff, the roles of the Defendants were as follows. Defendant Barry Faber, the attorney who represented Plaintiff in the underlying criminal case, was to assist the Assistant District Attorney in obtaining a guilty plea. Defendant Paul Sobchuk, Tammy Jackson's therapist and Faber's friend, was to encourage Tammy to make a complaint at the District Attorney's Office, and then to retain Defendants Laskoff and Hollander to represent her in a civil action against Plaintiff.

The Complaint consists of five counts. (Complaint, Docket No. 1, ¶¶ 43–48). Count I sets forth a claim against Defendant Faber alone, alleging that he violated Plaintiff's Sixth and Fourteenth Amendment rights to effective assistance of counsel and substantive due process when he acted in concert with the Assistant District Attorney to investigate and obtain Plaintiff's guilty plea to Gross Sexual Misconduct in violation of Section 1983 of Title 42 of the United States Code. The remaining counts state claims against all four Defendants. Count II alleges a conspiracy to deprive Plaintiff of his First, Sixth, and Fourteenth Amendment rights in violation of section 1985. Count III alleges failure to prevent a conspiracy to deprive Plaintiff of Sixth and Fourteenth Amendment rights in violation of Section 1986. Count IV alleges that Defendants violated Section 1983 by acting in concert with the Assistant District Attorney to deprive Plaintiff of his First, Sixth, and Fourteenth Amendment rights, thereby convicting Plaintiff of the wrong criminal charges, and further conspiring to extort money from the Plaintiff through a collateral civil action. Count V alleges fraud, extortion, and conspiracy in violation of state law.

Pending before the Court is a Motion to Dismiss (Docket No. 8) all claims against Defendants Laskoff and Hollander for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Court will grant the motion to dismiss Counts II and III as against Laskoff and Hollander, but will deny the motion as to Counts IV and V.

■ To resolve this Motion to Dismiss, the Court must accept as true all factual allegations in the Complaint, construe them in favor of Plaintiff, and decide whether, as a matter of law, Plaintiff could prove no set of facts which would entitle him to relief. *See Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987); *Gott v. Simpson*, 745 F.Supp. 765, 769 (D.Me.1990). First, the Court will outline the factual allegations set forth in the Complaint and then, because of the different showings required in an action under sections 1985 and 1983, the Court will address these claims in turn.

In support of his claims, Plaintiff makes the following factual allegations which, for purposes of this motion to dismiss only, the Court must accept as true. *Id.* On or about May 1, 1988, Plaintiff retained an attorney, Defendant Barry Faber, to defend him in connection with allegations of sexual abuse made by Plaintiff's niece, Tammy Jackson. Plaintiff alleges that Faber then acted in concert with the Assistant District Attorney to facilitate investigation of the allegations against Plaintiff and to obtain Plaintiff's guilty plea to two counts of Gross Sexual Misconduct. 17–A M.R.S.A. § 253. The following specific acts are attributed to Faber.

In October of 1988, Plaintiff advised Faber that an Assistant District Attorney had requested an interview with Plaintiff. Faber allegedly told Plaintiff, "to go and speak to [the Assistant District Attorney] alone, but don't admit to anything." Complaint at ¶ 17. On October 11, before any formal charges were filed, Faber "requested to meet with [the] Assistant to the District Attorney … indicating that Plaintiff was guilty concerning allegations of Tammy Jackson and want[ing] to work out a sentencing arrangement." *Id.* at ¶ 26–27. Plaintiff further states that in early December, 1988 Faber referred him to

Dr. Kerr, a psychiatrist, in connection with this case. Plaintiff was later interviewed by Dr. Kerr, who forwarded a report of the interview to Faber in early March of 1989. Faber, in turn, "turned over [Dr. Kerr's] report to the Assistant District Attorney ... in its entirety" on March 9, 1989. *Id.* at ¶ 22. After receiving this report, the Assistant District Attorney filed formal charges on or about March 20, 1989.

Finally, it is alleged that Faber misadvised Plaintiff with respect to the applicable criminal statutes implicated by his behavior, indicating that touching of genital parts "the factual basis for [Plaintiff's] plea" was a basis for Gross Sexual Misconduct.[1] *Id.* at ¶ 28.

Plaintiff alleges that as a result of Faber's cooperation with the District Attorney and Faber's misclassification of Plaintiff's behavior, Plaintiff was charged with, and pled guilty to, two counts of Gross Sexual Misconduct, a class A crime, although the factual basis for this plea, "touching the genital parts," did not support these charges. *Id.* at ¶ 29. On or about June 30, 1989, Plaintiff was sentenced to six years imprisonment, with all but two years suspended, and six years probation.

The Complaint further alleges that, in November of 1992, attorneys Laskoff and Hollander filed a civil action against Plaintiff seeking $500,000 in damages on behalf of Tammy Jackson. The case was referred to Laskoff's firm by Defendant Paul Sobchuk in August of 1992. *Id.* at ¶ 37. The Complaint alleges that Sobchuk, a psychologist, counselled Tammy Jackson in May of 1988, urged further restitution in the presentence investigation in May of 1989, and encouraged Tammy Jackson to sue Plaintiff for damages. *Id.* at ¶¶ 35, 36, and 38. The Complaint further alleges that on or about March 1, 1989, Faber told Plaintiff that he and Sobchuk were "good friends." *Id.* at ¶ 39.

It is alleged that Laskoff is "a close associate of Barry Faber's", and that from time to time, Laskoff conducts business out of attorney Faber's office. *Id.* at ¶¶ 33, 40, and 41. Finally, Plaintiff alleges that he has been informed that Barry Faber receives a percentage of all settlements he refers to Laskoff's office. *Id.* at ¶ 42.

## I. COUNT II: THE SECTION 1985 CLAIM

■ In Count II of the Complaint, Plaintiff alleges a cause of action against Laskoff and Hollander under section 1985 for conspiracy to violate Plaintiff's First, Sixth, and Fourteenth Amendment rights. Plaintiff does not specify which provisions of section 1985 were violated. Nevertheless, the Court concludes that the only provisions possibly implicated by the alleged conspiracy are as follows.

(2) ... if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws....

(3) If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

---

1. In fact, Maine law classifies the touching of genital parts for sexual gratification as "sexual contact," conduct that does not provide a basis for liability as Gross Sexual Misconduct. Under Maine law "sexual act" and "sexual contact" are defined, in pertinent part, as follows:

 C. "Sexual act" means:
 (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other;
 (2) ...
 (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another

person when that act is done for the purpose of arousing or gratifying sexual desire....
A sexual act may be proved without allegation or proof of penetration.
 D. "Sexual contact" means any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.
17-A M.R.S.A. § 251(1). Gross Sexual Misconduct (now Gross Sexual Assault) imposes criminal liability on sexual acts or sexual intercourse in specified circumstances. 17-A M.R.S.A. § 253. Sexual contact alone is not a basis for criminal liability for Gross Sexual Misconduct.

protection of the laws, or of equal privileges or immunities under the laws.... 42 U.S.C. § 1985.[2]

The Supreme Court has made it clear that to state a claim under section 1985(3) a plaintiff must show not only a conspiracy to deprive a person of equal protection of the laws, but also that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (noting that, because this section reaches purely private conspiracies, the requirement of invidious class-based animus prevents section 1985 from becoming "a general federal tort law.").[3] This element of class-based animus is also required in actions based on deprivation of equal protection under section 1985(2). *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Defendants argue that this claim must be dismissed because Plaintiff has failed to allege, and cannot allege, facts which show either racial or other class-based animus. While it is true that the Complaint failed to allege membership in any class that would excite invidious discriminatory animus, he argues that he is a member of the class of "wrongfully convicted felons." (Plaintiff's Response to *Motion to Dismiss*, Docket No. 11, at 5).[4] This classification fails, as a prac-tical matter, because Plaintiff did not belong to that class when the alleged conspiracy began. According to the Complaint, overt acts in furtherance of the goals of the conspiracy began no later than October of 1988, when Faber sent Plaintiff, unaccompanied, to see the Assistant District Attorney. Plaintiff was not convicted or formally charged with any crime until at least five months later. He was not a convicted felon but, rather, a potential criminal defendant at that time. Therefore, the conspiracy could not have been motivated by animus towards convicted felons as a class.[5]

Nor does Plaintiff prevail if he is considered a member of a class of potential criminal defendants. In order to make out a section 1985 claim, a complaint must allege facts showing that the Defendants conspired against Plaintiff " 'because of', not merely 'in spite of' its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, — U.S. —, 113 S.Ct. 753, 760, 122 L.Ed.2d 34 (1993). Failure to allege facts from which any inference of such a motivational factor can be drawn requires dismissal of a section 1985 claim. *Hahn*, 523 F.2d at 468; *Tauvar v. Bar Harbor Congregation of Jehovah's Witnesses, Inc.*, 633 F.Supp. 741, 746 (D.Me.1985), *aff'd*, 787 F.2d 579 (1st Cir.1986). Plaintiff has made no factual allegation which raises any inference that Defendants Laskoff and Hollander acted

---

**2.** In Plaintiff's memorandum in response to this Motion to Dismiss (Docket No. 11), he argues that the first paragraph of section 1985(2) was also violated by the alleged conspiracy, which interfered with his access to and treatment in state court. The first paragraph of section 1985(2) applies only to conspiracies to obstruct justice in the federal courts and therefore, is inapplicable to the case at hand. *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983).

**3.** Because section 1985(3) reaches purely private conspiracies, this class-based invidious animus, prevents the section from becoming "a general federal tort law". *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.

**4.** The Court excuses the failure to allege class-based animus, and considers Plaintiff's argument in his response, because the pleadings of *pro se* litigants are held to less stringent standards than pleadings submitted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

**5.** Even if Plaintiff were a convicted felon at the relevant time it is unlikely that this argument would prevail. The clear implication of recent Supreme Court decisions is that the class-based animus required by *Griffin* scarcely extends beyond race-based animus. As the Supreme Court observed in rejecting a claim alleging a conspiracy against nonunion workers, "it is a close question whether section 1985(3) was intended to reach any class-based animus other than animus against [African Americans] and those who have championed their cause." *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). *See also, Bray v. Alexandria Women's Health Clinic*, — U.S. —, —, 113 S.Ct. 753, 758 (1993) (declining to decide whether women are a qualifying class under section 1985(3)).

*because of* animus towards the class of potential criminal defendants.[6]

Because Plaintiff has failed to "allege facts showing that the Defendants conspired against the Plaintiff[ ] because of [his] membership in a class," the Complaint does not make out a claim under section 1985, and Count II will be dismissed. *Hahn,* 523 F.2d at 468.

## II. *COUNT III: THE SECTION 1986 CLAIM*

■ Count III must also be dismissed because a violation of section 1986 requires allegations that Defendants were aware of and failed to prevent, a conspiracy that violates section 1985. Since the Court concludes that the Complaint fails to make out a claim under section 1985, the claim under section 1986 will also fall. *Id.* at 468–69.

## III. *COUNT IV: THE SECTION 1983 CLAIM*

■ In order to maintain an action under Section 1983, two elements must be claimed: (1) the deprivation of a right or privilege secured by the Constitution or laws of the United States and (2) that the deprivation was committed by a person acting under color of state law.[7] Laskoff and Hollander argue that Count IV should be dismissed because Plaintiff fails to satisfy either of these elements. The Court disagrees.

■ First, there is no doubt that Plaintiff's allegations facially make out a claim of deprivation of rights secured by the Constitution. Plaintiff alleges, *inter alia,* deprivation of the effective assistance of counsel in connection with the criminal charges in state court. Interference with the right to counsel is actionable under section 1983. *Cinelli v. City of Revere,* 820 F.2d 474 (1st Cir.1987),

*cert. denied,* 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1988) (finding that a violation of section 1983 was established when a criminal defendant was wrongfully denied presence of counsel during interrogation and, that this deprivation led to prejudice); *Greater Newburyport Clamshell Alliance v. Public Service Co.,* 838 F.2d 13 (1st Cir.1988) (finding a deprivation of effective assistance of counsel under section 1983 when confidential information obtained in violation of the attorney-client privilege is introduced against criminal defendants in court). Here Plaintiff alleges that the conspiracy deprived him of effective assistance of counsel and that this deprivation resulted in a conviction for felony charges that were unsupported by a factual basis. These allegations are sufficient to satisfy the first element of a section 1983 claim.

■ Laskoff and Hollander next contend that Plaintiff has failed to make factual allegations that Defendants acted under color of state law. It is well established, however, that private parties who conspire with state officials may be sued under section 1983. *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir. 1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Adickes* the Supreme Court stated that:

> "The involvement of a state official in … a conspiracy [with a private party] plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized or lawful; … Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983."

---

6. He does, however, allege facts which establish a strong economic motive for filing the civil action. Actions taken for economic reason, even if they have adverse effects on an identifiable class, are not within the reach of section 1985. *See, West v. Town of Bristol,* 712 F.Supp. 269, 277 (D.R.I.1989) (actions rescinding benefits to retired veterans were motivated by financial concerns, not by class-based animus.)

7. Section 1983 provides:

"Every person who, under color of any statute,, ordinance regulation, custom or usage, of any state … , subjects, or causes to be subjected any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress…."
42 U.S.C. § 1983.

*Id.* at 152, 90 S.Ct. at 1605. The Complaint in this case alleges that Defendant Faber acted in concert with the Assistant District Attorney to deprive Plaintiff of his rights. Plaintiff also makes specific factual allegations about how and when Defendant Faber allegedly cooperated with the Assistant District Attorney's Office.

 While there are no allegations which show that Laskoff and Hollander had any direct contact with the District Attorney's Office in connection with Plaintiff's case, such allegations are unnecessary. It is not necessary that Plaintiff allege that each coconspirator deal directly with the state actor. *Hampton v. Hanrahan,* 600 F.2d 600, 624 (7th Cir.1979), *rev'd on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). What Plaintiff must allege is "that there was a single plan, the essential nature and general scope of which [was] known to each person who [he seeks to hold] responsible for its consequences." *Id.* at 621. *See also, Landrigan v. Warwick,* 628 F.2d 736, 742 (1st Cir.1980) (holding that where two separate conspiracies were established, those who cooperated in the second conspiracy were not liable for the first conspiracy); *United States v. Bello–Perez,* 977 F.2d 664 (1st Cir.1992) (conspirators must share a "tacit understanding that elicit agreement existed"). Here Plaintiff alleges that all of the Defendants were willful participants with the Assistant District Attorney in a plan to obtain a wrongful felony conviction by depriving Plaintiff of his right to counsel and then to file a collateral civil suit. The fact that the overt acts attributed to Defendants Laskoff and Hollander did not directly involve them with state officials does not deprive the overall conspiracy of the necessary element of state action.[8]

 Nor does the agreement to participate in the conspiracy have to be proven by direct evidence. As a practical matter, the Court of Appeals for the First Circuit has observed, "the agreement that rests at the heart of a conspiracy is seldom susceptible to direct proof: more often than not such an agreement must be inferred from all the

circumstances." *Earle v. Benoit,* 850 F.2d 836, 843 (1st Cir.1988). Thus, the lack of factual allegations going directly to the existence of an agreement is not a basis for dismissal. *Id.* It is sufficient to survive a motion to dismiss that Plaintiff has made factual allegations which indicate with a reasonable degree of specificity who did what, when, and how these actions resulted in the deprivation of rights. *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir. 1982).

Given the factual allegations made by the Plaintiff the Court cannot say that the Plaintiff could prove no set of facts that would entitle him to relief under section 1983. Therefore, the Court will deny the motion to dismiss Count IV.

### IV. *COUNT V: THE STATE LAW CLAIMS*

The Court has supplemental jurisdiction over the state law claims in Count V. *See,* 28 U.S.C. § 1367. Therefore the motion to dismiss these claims will also be denied.

Accordingly, it is hereby *ORDERED* that Defendants' Motion to Dismiss be, and it is hereby, *GRANTED* as to Counts II and III, and *DENIED* as to Counts IV and V.

---

8. It is also irrelevant that no state official is a defendant in the suit. *Kermit Construction Corp.*

*v. Banco Credito y Aborro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976).